Our next case this morning is Courage to Change v. El Paso County, No. 21-1227. When the counselor settles in, you may proceed. No need to rush. You may proceed. Good morning, Your Honor. If it may please the Court, my name is Rachel Maxim. I represent the plaintiffs in this case. My clients are some individuals who own a home, and then an organization that represents and provides services for people for housing and recovery. So, at issue in this case today, we have the violations of the Fair Housing Act, the Americans with Disabilities Act, and Rehabilitation Act. All of the claims in this case involve discrimination against disabled persons. Because our clients operated these homes for people in recovery, these are people who are protected under fair housing law and other federal law. Because they are in recovery, meaning they are no longer using drugs or alcohol. You concede that you operate a rehabilitation facility. Well, there's an issue. You bring up a good point here. Federal law does not distinguish between a group home and a... No, but you do. Your client conceded that it operated a rehabilitation facility. Correct. I mean, well, I wouldn't say conceded, but under the county's definition of a rehabilitation facility... But didn't Ms. Phillips... I'm sorry? Didn't Ms. Phillips agree with that at one point? Ms. Phillips? Yeah. Miller. Miller, I'm sorry. Ms. Miller. Sorry. I'm messing her up with you. I'm not going to have Phillips screwing anything up today. Okay. Ms. Miller. Under the county's definition, the home that was operated could be considered a rehabilitation facility. However, federal law, whether you call it a rehabilitation facility or a group home, is irrelevant. Because these people are protected under federal law because they are in recovery. Well, can they be put anywhere they feel like being put? Well, because they are in recovery and protected, they are entitled under federal law to live in communities of their choice, which includes residential communities. And the neighborhood of their choice? Correct. Are you suggesting that you cannot zone and have a certain area for manufacturing, rehabilitation, different types of situations? I'm not suggesting that the city can't zone. It's what I'm saying. I'm not suggesting that the city cannot create zoning laws to some extent, but cannot do so to exclude disabled persons from residential communities, which is what is at issue with this distinction being made between a rehabilitation facility and a group home. Well, doesn't that become relevant in the sense that you argue that there's protection under federal laws against discrimination, but isn't the county's zoning decisions relative to group homes versus rehabilitation facilities? Don't you have to show that there is discrimination in order to have a claim under those statutes? Yeah. So when you say it's irrelevant, I'm not sure I'm following that. It seems to me you have to work with what the county did and then demonstrate that there's discrimination. And what the county did was say that a rehabilitation facility can't be operated in a single-family residential zoning district, correct? That is what the county indeed did. All right. Let's look at that. That's one of several theories of discrimination. I know you've got the occupancy limits and standards and so forth and so on. I'd like to zero in on your argument that there was discrimination in zoning restrictions or zoning out of the rehabilitation facility. So, so far so good? Yes. All right. In your brief, reply brief actually, you say this, non-disabled persons are permitted to engage in the same treatment activities in the same residential zoning districts without violating the LDC. And what I need to know is what is your support for that? There was extensive testimony, which we presented at summary judgment, that the types of, quote, treatment activities that our clients were engaging in. Can you be a little more specific than that? Whose testimony? Let's start with that. That comes from a county representative, Mark Gephardt, who was also an official heavily involved in the creation of these laws. He testified that all of the things that the county wants to prohibit disabled persons from doing under the guise of a rehabilitation facility are all things that other persons. Is that what he said? Is that really what he said? Can you quote from him to that effect? I mean, I've read that testimony about ten times, and I'm not seeing exactly how you're summarizing it. I'm afraid I can't quote from it at this particular moment. Have you got it handy? I've got it right here, and I'd like you to point out where he actually said that. I can't cite a particular part. I mean, your argument turns on his testimony, correct? In part, yes. I mean, he talks about providing yoga and various and sundry things and people bringing in doctors and nurses, but does he ever really say that a group home for non-disabled people providing the same services as the Spruce property would be prohibited or wouldn't be prohibited? He explicitly says there's no laws prohibiting them from engaging in activities such as bringing psychologists or psychiatrists. But that isn't saying that it's exactly the same as the Spruce property. Of course a home can bring in a doctor to see somebody or a nurse, but isn't that different? You're operating a facility that provides those services. Well, they're operating a home where people reside and live like ordinary people do. They are just also getting treatment as part of their recovery, which doesn't make them any different than anybody else living in a residential neighborhood that may have other mental health issues. Well, what do the facts show that it doesn't the home at the Spruce property provide medical counseling and other services as a service for all the residents in the home? They did provide mental health services. They provided what's called lens treatment, which is measuring brain waves. Okay, and is there anything in the record to show that there's another home that does that same thing? That is not in the record because this rehabilitation facility distinction only applies to disabled persons in recovery. So there are no other homes like this. So where's the discrimination? The discrimination is in that only disabled persons in recovery are labeled with this rehabilitation facility distinction and can't engage in these activities. There's no other restrictions on other types of group homes, including people who are, you know... Well, the county in their brief said that if there are, they'd be prohibited. Are they wrong? Your Honor, in discovery there were no homes... I'm asking about their brief. Are they wrong or are they right? Are they wrong or are they right that... Well, I'll tell you what they say. They say in their brief any residents or other group living arrangement in a residential zoning district offering the same type of treatment offered at the Spruce Road property would be in clear violation of the LDC. Is that correct? That's if they were operating a rehabilitation facility, but only a rehabilitation facility is applied to disabled persons in recovery. That distinction only exists for them. That isn't what they said. There's no law... That isn't what they said. They said any residents or other group living arrangement. That's what they said. So where is the discrimination? They're saying that they would apply the LDC exactly the same to that situation as to your situation. So where's the discrimination? Unless you think they're wrong. They are wrong. Why are they wrong? And where's your support for the fact that they're wrong? Are we back to Mr. Gebhardt? Yes, in part. So this rehabilitation facility distinction only applies to disabled persons in recovery. There is no such category of treatment that is prohibited for any other person. Well, it only applies to drug addicts and alcohol problems. Correct, but people who are in recovery from that, meaning they're not using it. Well, the recovering is up and down. Well, the... I mean, that's the problem, that you have needles here and there and various other issues. Federal law has mandated that they are protected by law as long as they're not using. And there's no evidence in this case that any of the residents here were using. And so, therefore, they are protected by federal law. Did that answer your question? No, but that's fine. So getting back to your question, Judge Matheson. The county is saying that other people aren't allowed to operate the rehabilitation facility, which is correct. But the rehabilitation facility does not apply to other people because it only applies to disabled persons in recovery. Yeah. So they're... And if that's the case, though, I mean, if we're talking about discrimination, don't you need to show that the Spruce Road property is being treated differently from a similarly situated group home that doesn't have disabled people? Isn't that the very definition of what discrimination is? Well, they have been treated differently than similarly situated people because no other people have these restrictions placed on them. Well, that's not what the county is saying. We'll have to ask them about that. You've got plenty of other claims, so why don't you move to... The bottom line is federal law means that whether they're receiving treatment or not is irrelevant because the legislative intent of the Fair Housing Act and the ADA has been very clear that people who are engaging in treatment are protected by federal law. Well, do you agree that there could be a rational basis for making a distinction with some of the facts? In other words, it's your position it's an absolute prohibition to have any discrimination that the old age people are not subjected to. There's certainly some line to be drawn. The courts do not offer a lot of guidance on this issue, but perhaps the line might be drawn at people who are using methadone who aren't users. But the courts, I don't want to get into... Well, don't drug addicts get into methadone? At the home at issue here, no. No drugs for withdrawal are used. The residents of this home go through withdrawal on any of that. The problem I'm having is that there were several defenses that were asserted that went to the jury. And your position is we couldn't tell what they decided. My question is, did you request a special verdict? We did not request a special verdict. I'm afraid I'm a little confused by your question because our issue with the ruling on MSJ and also the jury instructions that were tendered is that the instructions on the prima facie case for discrimination and also the defenses available are not recognized by any court. Bangor is the controlling case in the court here. It says that there's only two justifications. There is benign discrimination, meaning it's actually beneficial to them, or public safety, which is actually the safety of the residents, not rulers, whatever of their nature. It lists those two, and I don't want to chew up all your time talking about at least. But what I do want to ask is, are we on the cutting edge here? You refer to federal statutes, but are there any cases that take the position that you do as far as rehabilitation facilities versus group homes, or are we on our own? There are other cases to support our position. One of them is Shores Property, 730F3D1142. That's out of the Ninth Circuit. We've also got Schwartz v. City of Treasure Island. On which claim? This is on the issue of if treatment matters or not in terms of protection under federal law. You're challenging, though, various aspects of the zoning law and how it's been applied. So your claims are framed as attacking this, the occupancy limits, the standards. And you aren't really speaking to those claims. Let me give you an example. You're challenging the occupancy limits. One question I had about that is, why isn't the proper comparator homes for unrelated disabled individuals and not homes for the elderly or foster care or day care? Is there any law out there that helps us with that? Well, the issue isn't whether they're comparators or not. The issue is that... Well, the issue is if it's discrimination. I mean, if your clients are being discriminated against, it's because others are being treated in a different way. That's your argument, isn't it? Yeah, and you touched exactly on the issue there. Is there explicit discrimination in that they're treated differently from both other types of group homes? Well, that's my question. What types of group homes do we compare with? Do we compare with a group home of non-disabled individuals? Or do we have these homes for the elderly or the homes for kids? Are those just in a different category? And is there any case law that helps us? If the court wishes to use a comparison, then it would be group homes for the aged, foster homes. Yeah, but do you have any support for that? Do you have any case support for that? The only case law I support is that this is facial discrimination in that they treat disabled persons. And that's a Judge Phillips. Are we kind of on our own, or do you have a case that says that? The case is Banger Terror, which is that it's facially discriminatory to explicitly, on the face of the law, treat someone differently because they're disabled. We have our group home for disabled people that has restrictions that are not placed on any other types of homes and not placed on homes for unrelated people, just a normal family. Any other questions? Thank you. Thank you for your argument. With that, I will reserve the remaining minutes. Well, you're over time. Oh, I am. Let's see how it goes. Good morning, Your Honors. May it please the Court, William T. O'Connell for Defendant Appalachia, El Paso County, Colorado. With me at counsel table is Co-Counsel Stephen Klafke. I will begin with a plaintiff's argument that the district court was in error when it granted, in part, the county's motion for summary judgment, a partial motion for summary judgment. The district court properly found that the plaintiff was, in fact, operating a rehabilitation facility prior to 2016 at the Spruce Road property. As Judge Matheson pointed out, we had Dr. Miller essentially concede that fact in written correspondence to the county. With respect to the other elements behind the district court's order granting my client's motion for summary judgment, with respect to the alleged zoning out of the rehabilitation facilities, what plaintiff seeks here is essentially that any zoning restrictions on rehabilitation treatment facilities in a residential zoning district is discriminatory. Any zoning regulations are discriminatory. And there's simply no legal authority to support that type of broad argument. Well, they're arguing in their brief, though, that the types of rehabilitation services at the Spruce Road property can occur in other places in the residential zoning district and, therefore, by prohibiting the residential facility at Spruce Road, you're discriminating against them. And then let me just repeat what you say in your brief. You say that any residence or other group home living arrangement in a residential zoning district offering the same type of treatment offered at Spruce Road would be in clear violation of the LDC. But I didn't see support for that statement, and I'm interested in what the support for that statement is. The support for that statement, Judge Matheson, would be the actual land development code itself, along with the support for that. Mr. Gephardt, to your point, Your Honor, never testified that the same type of treatment that was being offered at the rehabilitation facility at the Spruce Road property would be permissible in other types of facilities in residential zoning districts. Judge Matheson, you correctly pointed out he was referring to yoga. He was referring to maybe doctors coming in and out of homes or facilities. But what we have here at the Spruce Road property is the district court found that page 18 of this order on the motions for summary judgment. We had extensive treatment elements, including EEG neurotransmitter treatment. We had titration to reduce drug dependency over time. We had sale of nutraceutical supplements, both wholesale and when the patient leaves. None of that is permitted pursuant to the express terms of the land development code and definitions of group homes in residential zoning districts. So there's no evidence to support the plaintiff's argument that those types of treatment activities that were going on at the Spruce Road property when it was operating a rehabilitation facility were allowed in a residential zoning district. There's no evidence to support that, and the land development code itself refused that. Well, but Mr. Gephardt was asked about a variety of services, and he testified that if doctors were brought in, nurses were brought in, counselors were brought in to a group home that was not for disabled, wouldn't that be allowed? Didn't he say that would not be prohibited? I don't believe he actually affirmatively testified to that. Well, the questions and answers maybe aren't the model of clarity, but we're on summary judgment, and we draw inferences in favor of the plaintiff, and why wasn't there enough there to create an issue of fact for the jury as to whether these other homes were being treated more favorably than the Spruce property? Well, there was no evidence to support the plaintiff's argument that there was. I mean, they didn't deduce any evidence, specific evidence to point out this particular home, this particular home. It goes back to the comparators. It's apples and oranges what other group homes are allowed and what's allowed at rehabilitation. All right, so is it more a question, not so much of the evidence deduced, as it is a matter of how the LDC would be applied in those circumstances? In other words, if Mr. Gephardt was saying, well, under the LDC, that would be fine, and as you accumulate the examples that were presented to him where he says, well, that wouldn't be prohibited, that wouldn't be prohibited, don't we get to a point where it's looking a lot like what was going on at the rehabilitation facility at Spruce property? And if that's true, why wouldn't that be discriminatory? I don't think there's any evidence in the record. Well, I'm not talking now about evidence. These are the questions and answers that were given at the deposition about really the scope and applicability of the LDC. And it's your own, you know, it's a county official who's saying this. That's correct, Your Honor. He was one of our 30B6 witnesses. The questions framed by plaintiff's counsel didn't touch on exactly what was going on at the Spruce Road property. She framed the questions in the lines of, well, can yoga be allowed at a… Well, let's forget about yoga for a minute, because there was discussion about more doctor-nurse counseling services. You're correct. And there was testimony from Mr. Gebhardt that those types of professionals would be allowed to come into the home. Okay. But what was going on at the Spruce Road facility when it was operating the rehabilitation facility went far beyond that. It fell within the definition of rehabilitation facility under the LDC. We have Dr. Miller admitting she was operating a rehabilitation facility. We have Dr. Miller admitting she never, her facility never wanted to be considered a group home. So when you couple those admissions along with a detailed look, as the district court found, into the treatment elements being offered at the Spruce Road home, it was clear that what they were doing was not a group home. It was a rehabilitation facility, and those are expressly allowed under the LDC as an allowed use in commercial zoning district because they're of an institutional nature. It's of an institutional character. Those types of treatment activities simply do not go on at group homes, which are permitted, of course, in the residential zoning districts. If we disagreed with you, and if we thought that the occupancy and the standards were facially discriminatory, what was your evidence of justification that was used to defeat plaintiff's summary judgment motion? First of all, you had to come up with some, right? And if you had to come up with them, what were they? Yes, Your Honor, well, there were two. The occupancy caps for group homes for alcoholics and drug addicts were set at the same limits as those who can occupy, set at the same limits for unrelated non-disabled folks who can occupy the same home. So in other words, roommates. That's essentially what a group living arrangement is. They're roommates. The county set that five-person limit because that was the limit for unrelated non-disabled folks. Is that why it wouldn't be facially discriminatory, or is that your justification? That's one of the bonafide justifications, Your Honor, under Bangor. And the other justification... Well, I thought Bangor only listed two. There may be more that are available there, but one was benign discrimination and the other was safety. Are you saying it was one of those two? No, I'm not. What I'm saying is that Plaintiff reads Bangor far too narrowly. Just the public safety and the benign discrimination justifications were in the context of that particular case. Okay, and I'll concede to you that point for argument purposes, that there may be more available under Bangor. But what were you, what did you give the district court to say, even if you find it's facially discriminatory, please deny summary judgment? That's what I'm not seeing, is what the justification was that was offered to the district court. What I see is the district court just says, well, I'm going to deny the motion for summary judgment because there may be reasons out there, and didn't put the onus on you to come up with justifications. I understand where you're coming from, Judge Folkes, but the justifications that were offered were one of which I just mentioned, were the fact that the number five was set. Was it offered as summary judgment or was it offered at trial? I think what you're being asked is, you know, that the district court said, well, maybe they'll come up with something at trial. But did you come up with something at summary judgment? I'm fairly certain, Judge Matheson, that it's in the summary judgment brief. Well, are you certain or not? I mean, this is an important question you're being asked, because if you didn't come up with anything,  Yes, Your Honor. No, it was actually brought up. Yeah. It's at page 23 of the district court's order. In response, the county claims, well, that they're not relevant comparators because the occupancy caps for group homes for the aged are set by statute, and then we argue that they're non-discriminatory because the caps are set at the same levels for non-disabled, unrelated folks. So that was in front of the district court. That doesn't sound like the justification to me. That sounds like there's not facial discrimination, that sort of an argument. Do you contend that Bangor has a third category of justification that you presented to the district court? And what was it? And if you can tell us where you presented that. I didn't get that out of the district court's order. Okay. Well, Judge Phillips, the county's argument is that Bangor is not as limited and narrow as plaintiff suggests, and that the two bona fide legitimate reasons, justifications for setting the cap at five were it's the same cap that applies to unrelated, non-disabled folks. That's the first justification. That's our reason for why we did what we did. And then the other argument we raised was that the comparators that plaintiff was citing,  those aren't relevant comparators because those occupancy caps are set by state statute. Is there any case law, I understand the state statute point you're making, but as far as being relevant comparators, don't you have to point to some authority where the claims are being made under federal law that they aren't relevant comparators? Well, it's a very fact-specific case, Judge Matheson, because these were the comparators cited by plaintiff. So there's no case law out there that I could find that says they're not relevant comparators. But when you see that occupancy caps are set by state statutes, and group homes for alcoholics and drug addicts, there's no state statute with respect to those occupancy caps. That was the argument. I mean, they framed it in that fashion. Okay. So to Judge Phillips's point, I just want to make it clear one more time. The justification, because it was all about the five-person occupancy cap, five-person, five, why the five-person? Because that's what roommates, those are the same occupancy caps that are applicable to a roommate situation, which is what a group home for alcoholics and drug addicts is. And then our second argument was, in the comparators district court, they're not relevant because those caps are set by state statutes. But even if they were set by state statutes, they're the same. Yeah, Judge Kelly, I think that, for example, I think agent, maybe eight folks, and then some of the other group living arrangements may be different. But this whole, one of the primary arguments at summary judgment was, why the number five? And we came up with a justification, the number five, because that's the same cap for non-disabled, unrelated folks who can live in a house. So the county believed that the court correctly, the district court correctly found that under Bangor, that we weren't, the county wasn't allowed to go beyond the public safety and benign discrimination justifications. And that the judge- I know the district court, again, the order reads that the prima facie case was made, and then said, but we're going to deny summary judgment because the county may be able to justify this. So it wasn't really crediting your, the argument you're making right now about the five-person limit for the roommate home as a reason to deny summary judgment. It was just saying, well, maybe the county will come up with something to try. Well, I disagree, Judge Madison. We proffered the two reasons that I've mentioned. Brad, do you disagree with what the district court wrote? No, I disagree. That's all I'm asking. That's what the district court said. And what are we supposed to do with that? Well, we proffered the two reasons, the justifications. The five-person cap is applicable. Well, one person's justifications could be another person's defense against the prima facie, that there's no prima facie case. Well, the district court probably found that our justifications created a fact issue. No, the district court said you might be able to show something at trial. The district court found that because a reasonable fact finder could find that the different occupancy levels are based on bona fide governmental concerns, the court will deny plaintiff's motion for partial summary judgment. And that's what we did, and that was the proper ruling, because we had plaintiff's motion, we had the county's motion, and the occupancy caps relates to plaintiff's motion, and the court probably found that the justifications offered by the county created a fact issue for the jury test. I understand. I think I understand your argument. Thank you. You're out of time, but if you have anything in conclusion, go ahead. Well, in conclusion, Your Honors, the county believes that plaintiff may have developed a view of the order denying her motion for partial summary judgment by not asserting a Rule 58 motion at the close of evidence. For the reasons mentioned in the briefing, the county believes that the district court's order granting its motion for summary judgment should be affirmed for the reasons we discussed this morning, the rehabilitation facility, et cetera. And as far as the jury instructions, we believe the motivating factor instruction and the affirmative defense instructions are correct and are correct summaries of the law. Thank you. All right. You both finished at about the same point, so we got that equal. Thank you for the arguments this morning. We very much appreciate that. The case will be submitted and counselor excused.